**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 94-40063

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE JAIRO VALENCIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(93-CR-10012-10)

_____

(January 26, 1995)

Before DAVIS, BARKSDALE and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Jose Jairo Valencia pleaded guilty to conspiracy to distribute cocaine, count one of an eleven-count indictment which charged Valencia and his nine codefendants. He appeals his 81-month sentence of imprisonment, asserting that the district court erred by increasing his offense level by four levels pursuant to U.S.S.G. § 3B1.1(a) and by attributing to him all the cocaine found in his apartment when he was arrested. We affirm his sentence.

FACTS

On August 19, 1992, a traffic stop in Allen Parish, Louisiana, revealed one and one-quarter kilos of cocaine in a vehicle with three passengers, all named as co-conspirators in count one. One of the passengers, R.B. Mills, revealed that the cocaine was supplied by Valencia and that Valencia previously had provided approximately four

kilos of cocaine, and that all the cocaine went to an Alexandria, Louisiana drug ring headed by Aaron Bruce Williams (hereinafter referred to as "the Williams organization", or "the Williams group"). Valencia admitted that he had supplied more than five kilos of cocaine to the Williams group in Alexandria. Valencia cooperated with law enforcement agents by wearing a wire when receiving payment for prior deliveries and talking with one of the leaders of the Williams organization about future deals.

The presentence investigation report's (PSR) description of the offense explained the role Mills played in uncovering the operations of the Williams organization. The PSR lists Valencia and four other individuals as suppliers to the Williams organization, and states that, incident to Valencia's arrest, Houston law enforcement discovered approximately four kilos of cocaine and 8.5 grams of cocaine base in Valencia's apartment.

At sentencing, the district court found Valencia accountable for all the cocaine found in his apartment. The district court also found that Valencia was an organizer of the criminal enterprise and, pursuant to U.S.S.G. § 3B1.1(a), increased the offense level by four. The court noted that Valencia was not "uniquely situated," but because of his communication with the other conspirators, he promoted the sale, use, and distribution of cocaine. After addressing all the objections to the PSR, the district court calculated an offense level of 33, with an associated guideline range of 168-210 months imprisonment. The district court then granted the government's motion for a downward departure from the guidelines (due to Valencia's substantial assistance) and reduced his offense level to

2

This resulted in a new guideline range of 78-97 months imprisonment. The district court sentenced Valencia within this new range to 81 months imprisonment.

Valencia challenges the increase in his offense level which arose from the district court's finding that he was an organizer of the criminal scheme. He also challenges the amount attributed to him from the drugs found in his apartment. Finding no clear error in the district court's factual findings, and no error in the district court's application of the guidelines, we affirm.

## DISCUSSION

*§ 3B1.1 ORGANIZER*?

In his challenge to the § 3B1.1 finding, Valencia argues that, although he supplied large quantities of cocaine to the Williams organization, his role in the offense did not meet the factors that the guideline commentary directs the court to use in making its determination of who is a leader or organizer.

Valencia asserts in brief that the district court improperly applied § 3B1.1. However, the determination of whether a defendant is a § 3B1.1 leader or organizer is a factual determination. United States v. Mejia-Orosco, 867 F.2d 216, 220 (5th Cir. 1989), cert. denied, 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). The role of a defendant--whether he is a leader or organizer, or minimal or minor participant, is among the "'sophisticated factual determinations' a district court makes which 'depend upon an assessment of the broad context of the crime.' Accordingly, such findings 'enjoy the protection of the "clearly erroneous" standard.'" United States v. Hatchett, 923 F.2d 369, 376 (5th Cir. 1991), quoting

3

United States v. Mejia-Orosco, 867 F.2d at 221. See also, United States v. Buenrostro, 868 F.2d 135, 137 (5th Cir. 1989), cert. denied, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990).

We review challenges to factual findings under the guidelines for clear error. United States v. Mackay, 33 F.3d 489, 496 (5th Cir. 1994); United States v. Carreon, 11 F.3d 1225, 1230 (5th Cir. 1994). Thus, we will disturb a district court's factual finding regarding a defendant's role in criminal activity only if it is clearly erroneous. United States v. Barreto, 871 F.2d 511, 512 (5th Cir. 1989); United States v. Puig-Infante, 19 F.3d 929, 944 (5th Cir. 1994), cert. denied, 115 S.Ct. 180, 130 L.Ed.2d 114 (1994). A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole. Puig-Infante, id. at 942; United States v. Whitlow, 979 F.2d 1008, 1011 (5th Cir. 1992). See also, United States v. Rodriguez, 897 F.2d 1324, 1326 (5th Cir. 1990), cert. denied, 498 U.S. 857, 111 S.Ct. 158, 112 L.Ed.2d 124 (1990) ("While any information with 'sufficient indicia of reliability to support its probable accuracy' may be considered in making the sentencing factfindings, . . . there must be 'an acceptable evidential basis' for the court's factfindings at the sentencing hearing." (citations omitted)).

The sentencing guidelines provide a four-level increase in the offense level if the defendant was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Section 3B1.1 was intended to be applied "only if a defendant was an organizer or leader of at least one other person who was criminally culpable in,

4

though not necessarily convicted for, the endeavor." <u>United States v. Gross</u>, 26 F.3d 552, 554-55 (5th Cir. 1994).

The instant sentencing judge is the same district judge who presided in the October 27, 1993 - November 2, 1993 trial of Aaron Bruce Williams, Arthur Williams, and Garland Andrew Stewart, three of Valencia's nine codefendants. Valencia testified in that trial, as a government witness, about his role and his knowledge of the role of his co-conspirators.[1] At Valencia's January 7, 1994 sentencing, the district judge noted his recollection of "all the testimony" and stated that "[Valencia] had dialogue and connection with the other people in this transaction so that he was promoting not only sale but use and distribution."

Valencia contends that the district court improperly applied §3B1.1(a) because his role as supplier is not the equivalent to being a "leader or organizer".[2] He does not challenge the district court's reliance on testimony from the trial of codefendants. "In a plea bargain case, this court will not review challenges to the factual basis of a guideline's applicability which has not been preserved by objection in the district court." <u>United States v. Mourning</u>, 914 F.2d 699, 704 (5th Cir. 1990).[3] Despite Valencia's argument of

---

[1]    During oral argument, defense counsel indicated that she was present during Valencia's testimony at the co-conspirators' trial. Although she did not recall details of his testimony, she indicated that he testified about his role and that of others.

[2]    The PSR does not contain information which shows that Valencia directed others. Its §3B1.1 recommendation, is based upon Valencia's supplier status.

[3]    When questioned during oral argument, counsel for Valencia maintained that the objection is to the characterization

"improper application", as we have noted, at issue is the district court's factual determination about Valencia's role in the criminal enterprise.  Absent clear error in this determination, the district court's *application* of § 3B1.1 is proper.

It is plausible, in light of the record read as a whole, that Valencia was more than just a supplier, and that Valencia had a dialogue and connection with his co-conspirators from which the district court could conclude that he was an organizer within the meaning of § 3B1.1.  The record supports this finding via the guilty plea transcript's description of Mills' role and the connection between Mills and Valencia, and by the subsequent observation recorded in the reasons for detaining one of Valencia's codefendants.[4]

---

of Valencia as an organizer on the basis of his role as a supplier, and concluded that the supplier of such a large quantity necessarily promotes sale, use, or distribution, thus these factors are not indicia of a § 3B1.1 "leader" or "organizer" role. Valencia did not object to the district court's reliance on "all the testimony" either at the time of sentencing, in his brief to this court, or at oral argument.  Although, we do not review the question whether the district court may rely upon the testimony from the codefendant's trial, <u>Mourning</u>, we do note that, generally, the district court may take judicial notice of its own records. <u>See and compare</u>, <u>Horowitz v. Henderson</u>, 514 F.2d 740, 741 n.1 (5th Cir. 1975) ("The sentencing Judge, even had he not presided over the Williford trial, would nevertheless have been entitled to take judicial notice of proceedings in open court."); <u>United States v. Estep</u>, 760 F.2d 1060, 1063 (10th Cir. 1985) (It was within the court's discretionary authority to judicially notice the trial transcript of the earlier portions of the same proceeding.).

[4]    Magistrate Judge Marcia A. Crone's February 7, 1994 "Written Statement for Reasons of Detention [of codefendant Huber Asparillo Moreno]" (R.Vol.4, p. 1205) states that "Valencia explained that he wanted Moreno to accompany Mills and Stewart on the fourth delivery to make sure that the money got back to Houston so that Valencia could pay his source for the drugs." To the extent that Valencia's trial testimony was consistent with this statement, the district court could easily infer that Valencia played an organizational role over and above that of supplying the cocaine.

Although the quantity of cocaine is a nondispositive factor in the § 3B1.1 determination, it is a factor nonetheless.  When this factor is combined with the other information upon which the district court relied, we find no clear error in the § 3B1.1 finding, even though the district court failed to specifically articulate the factual basis for its determination.  As we stated in Mejia-Orosco, 867 F.2d at 221,

> We will affirm sentences imposed by district judges who make factual findings that are not clearly erroneous, and who apply the guidelines to those findings.  In such cases, the sentencing judge need not offer further reasons justifying the sentence. . . .
>
> Implicit in what we have said is the conclusion that the district court's simple statement that the defendant is a "manager" or "leader" is a finding of fact.  Building on the lesson of Wainwright v. Witt, [469 U.S. 412,] 105 S.Ct. [844] at 855, [83 L.Ed.2d 841 (1985)], we "decline to require the judge to write out" more specific findings about the defendant.  We recognize that so formal a requirement would interfere with the smooth operation of the sentencing hearing.  In some instances, what is necessarily a "judgment call" may not be susceptible of particularization.  Nonetheless, we urge district courts to clarify their ultimate factual findings by more specific findings when possible.

Because we find no clear error in the factual finding that Valencia was an organizer, it follows that the district court properly applied U.S.S.G. § 3B1.1(a) to this factual determination.  Accordingly, we affirm the four level increase.

*CONSTRUCTIVE POSSESSION?*

Valencia also challenges the use of *all* the cocaine found at his residence in computing the amount he possessed.  The district court

---

See Rodriguez, 897 F.2d at 1326 (the district court is permitted to make inferences from the facts, and these inferences are factfindings reviewed under a clearly erroneous standard).

considered his objection, but found that "all of the substance in the apartment is properly tagged to Mr. Valencia". The district court noted that he was living in the apartment and had a female companion, and that there was no indication that when the police arrived at the apartment anyone tried to leave or run away.

Constructive possession is defined as "ownership, dominion, or control over illegal drugs *or* dominion over the premises where drugs are found." United States v. Carter, 953 F.2d 1449, 1456 (5th Cir. 1992), cert. denied sub nom., Hammack v. United States, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992), quoting United States v. Onick, 889 F.2d 1425, 1429 (5th Cir. 1989). Thus, one who exercises dominion over premises where contraband is found can be deemed to possess. United States v. Lopez, 979 F.2d 1024, 1031 (5th Cir. 1992).

A presentence report generally bears sufficient indicia of reliability to be considered as evidence by the district court in resolving disputed facts. United States v. Montoya-Ortiz, 7 F.3d 1171, 1180 (5th Cir. 1993). A district court may adopt facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence. United States v. Puig-Infante, 19 F.3d 929, 943 (5th Cir.), cert. denied, 115 S.Ct. 180 (1994). See also, United States v. Shipley, 963 F.2d 56, 59 (5th Cir. 1992), cert. denied, 113 S.Ct. 348, 121 L.Ed.2d 263 (1992) (The district court may rely on information contained in the PSR in making its factual determination for sentencing, as long as the information has some minimum indicium of reliability). The defendant bears the burden of showing that the

8

information in the PSR relied on by the district court is materially untrue.  <u>Puig-Infante</u>, 19 F.3d at 943.

The PSR indicates that the apartment in which Valencia was arrested, and in which the challenged amount of cocaine was found, was Valencia's apartment.  Valencia objected, asserting that the apartment was someone else's residence and that he was visiting at the time of his arrest.  In response, the PSR states that the Department of Public Safety records reveal that Valencia had recently changed his address to this apartment.  On appeal, Valencia contends that, because there is a factual dispute, the district court had insufficient information to support its finding that the drugs found in the apartment should be assessed to him as relevant conduct.  We disagree.

The source of the information upon which the district court relied has sufficient indicia of reliability to support its probable accuracy.  Although Valencia correctly observes that no testimony was presented on this issue, the record reflects no request for, or denial of, an evidentiary hearing.  Valencia has not shown that the PSR information is untrue.  We find no error in the district court's decision to accept the information contained in the PSR.  The PSR provides a sufficient basis for a factual determination that the apartment was Valencia's residence over which Valencia exercised dominion.  The district court's conclusion that all the cocaine found in the apartment can be attributed to Valencia for sentencing guidelines purposes was therefore not in error.

CONCLUSION

For the foregoing reasons, Valencia's sentence is AFFIRMED.

9