**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 93-9121
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOHN M. RONNING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
(March 3, 1995)

Before JONES, DUHÉ, and STEWART, Circuit Judges.

DUHÉ, Circuit Judge:

John M. Ronning appeals the district court's four-level enhancement of his sentence under U.S.S.G. § 3B1.1(a). Ronning pled guilty to mail fraud after two days of a bench trial. The court found that Ronning was the leader or organizer of an otherwise extensive scheme to defraud his clients. The only other participant in the scheme, however, was Ronning's partner J.D. Wimple. Because the record does not show that Ronning exerted some control over Wimple, we vacate the sentence and remand for resentencing.

BACKGROUND

Ronning and Wimple operated a loan brokering business named WESTPAC Financial Group, Inc. (WESTPAC). Wimple served as President, and Ronning served as Executive Vice-President or Chief

Executive Officer.  Ronning controlled all corporate assets. WESTPAC packaged loan proposals and located interested lenders for its clients and charged them advance fees for its services. Ronning and Wimple misrepresented to their clients WESTPAC's contacts with worldwide financial institutions and WESTPAC's past performance in securing loans.  Instead of placing collected advance fees in trust accounts until loan commitments were made, Ronning and Wimple pocketed the advance fees without refunding them or closing the loans.  The scheme involved $1,134,852 in advance fees collected from over 100 victims.

After two days of a joint trial, Ronning pled guilty to one count of mail fraud, and Wimple pled guilty to one count of tax evasion.  Applying the 1987 Sentencing Guidelines, Ronning's PSR recommended that the court apply the four-level § 3B1.1(a) enhancement because Ronning was Vice President of WESTPAC and he had five or more participants working under him.  Ronning objected to the application of § 3B1.1.[1]  The court disagreed with him and applied § 3B1.1 because it found him to be a leader and organizer and the scheme to be otherwise extensive.[2]

## DISCUSSION

A district court's determination that a defendant is a § 3B1.1 leader or organizer is a factual finding, which we review for clear

---

[1]  U.S.S.G. § 3B1.1(a) mandates a four-level enhancement if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."

[2]  Because we agree with Ronning that he was not a leader or organizer under § 3B1.1, we do not address the court's finding that the scheme was otherwise extensive.

error. <u>United States v. Valencia</u>, No. 94-40063, 1995 U.S. App. LEXIS 1593, at *4 (5th Cir. Jan. 26, 1995). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." <u>Id.</u> at *5.

Section § 3B1.1(a) has two requirements: (1) the defendant must have been a leader or organizer in the criminal activity, and (2) the scheme must have either included five or more participants or been otherwise extensive. U.S.S.G. § 3B1.1(a). The commentary defines "participant" as a person who is criminally responsible for the commission of the offense, but need not have been convicted. <u>Id.</u> commentary n.1. The record contains no evidence of criminal responsibility of WESTPAC employees other than Ronning and Wimple. They were the only two participants in this scheme.

Ronning contends that he and Wimple were equals, and thus, neither was an organizer or leader. Offenses committed by "individuals of roughly equal culpability" do not "receive an adjustment under this Part." U.S.S.G. § 3B1.4 commentary. The Government responds that, although Wimple had the position of President, Ronning was the de facto leader of the operation. Ronning traveled abroad to visit clients, and they looked to him as the head of the operation. Ronning also controlled the purse strings.

The Sentencing Commission added commentary note 2 to § 3B1.1 in 1993. Although the district court applied the 1987 Sentencing Guidelines, we may consider this new note because it clarifies §

3

3B1.1 and is not intended to change it substantively.  United

States v. Gross, 26 F.3d 552, 555 (5th Cir. 1994).  The note reads:

> To qualify for an adjustment under this section, the
> defendant must have been the organizer, leader,
> manager, or supervisor of one or more other
> participants.  An upward departure may be warranted,
> however, in the case of a defendant who did not
> organize, lead, manage, or supervise another
> participant, but who nevertheless exercised
> management responsibility over the property, assets,
> or activities of a criminal organization.

U.S.S.G. § 3B1.1 commentary n.2, added by id. app. C, amend. 500

(effective Nov. 1, 1993).  The note resolves a circuit split over

whether control of another participant is required for § 3B1.1 to

apply.  Id. app. C, amend. 500.

To qualify for the four-level § 3B1.1(a) enhancement, a person

must have been the organizer or leader of at least one other

participant.  Valencia, 1995 U.S. App. LEXIS 1593, at *6; Gross, 26

F.3d at 555.  The note recognizes an exception to the control

requirement if a defendant exercises management responsibility over

a criminal organization's property, assets, or activities.  The

courts that have employed this exception, however, have applied it

only to the three-level § 3B1.1(b) enhancement for a manager.  See

United States v. Carson, 9 F.3d 576, 592 (7th Cir. 1993), cert.

denied, 115 S. Ct. 135 (1994); United States v. Chambers, 985 F.2d

1263, 1268-69 (4th Cir.), cert. denied, 114 S. Ct. 107 (1993); see

also United States v. Greenfield, Nos. 94-1001, 94-1033, and 94-

1086, 1995 U.S. App. LEXIS 824, at *11 (2d Cir. Jan. 13, 1995)

(noting that the exception would not apply to § 3B1.1(c) because

that subsection does not contemplate a criminal organization).

In <u>Carson</u>, the Seventh Circuit vacated a § 3B1.1(a) enhancement because the record failed to support a finding that the defendant exercised direct or indirect control over any participant. 9 F.3d at 591. For another defendant who was given an enhancement under § 3B1.1(b), however, the court determined that proof of control was not necessary if the defendant exercised management responsibilities over a criminal organization's property, assets, or activities. <u>Id.</u> at 592 (citing <u>Chambers</u>, 985 F.2d at 1268). Therefore, <u>Carson</u> distinguishes between subsections (a) and (b) by making proof of control necessary under (a) but not necessary under (b).

The Sentencing Commission created the exception to the control requirement because of <u>Chambers</u>. U.S.S.G. app. C, amend. 500. In that case, the Fourth Circuit held that a defendant who manages property without supervising people could satisfy § 3B1.1(b). <u>Chambers</u>, 985 F.2d at 1268. Because the Sentencing Guidelines do not define "manager," the Fourth Circuit applied a plain meaning approach to the term. <u>Id.</u> The court determined that none of the dictionary definitions of manager require supervision of people; a manager can either supervise people or manage the property.[3] <u>Id.</u>; <u>see also</u> <u>United States v. Mares-Molina</u>, 913 F.2d 770, 774 (9th Cir. 1990) (Rymer, J., dissenting) ("I respectfully dissent, because one

---

[3] Because management of property may not be as sound a basis for determining a defendant's role in the offense, the Fourth Circuit also requires a showing that the defendant is more culpable than other participants. <u>Id.</u> at 1268-69.

5

many 'manage' a <u>thing</u>, such as a business or money or a warehouse, as well as a <u>person</u>.").

Applying a plain meaning approach to "leader" and "organizer," we note that their definitions relate to supervision of people only. Leader is defined as a person who leads as a commander. **Webster's Third New International Dictionary** 1283 (1981). Organizer is defined as a person who travels for the purpose of establishing new organizations. <u>Id.</u> at 1590. A commander commands people, and organizations are composed of people. Unlike a manager, a leader's or organizer's actions must directly affect other people. Consequently, a leader or organizer must control or influence other people.

Our opinions in <u>Valencia</u> and <u>Gross</u>, both § 3B1.1(a) cases, support this conclusion. Because they require a defendant to lead or organize another participant but do not mention the commentary note's exception to the control requirement, they recognize implicitly that the exception does not apply to § 3B1.1(a). Management responsibility does not make a leader or organizer. Ronning's control of WESTPAC's assets does not allow application of the four-level § 3B1.1(a) enhancement.[4]

Thus, for § 3B1.1(a) to apply in this case, the record must support a finding that Ronning organized or led Wimple in some way.

[4] The district court thought that Ronning was more culpable than Wimple and, thus, more deserving of the less favorable plea agreement. Although relative culpability essentially distinguishes a leader or organizer from a manager or supervisor, <u>see</u> § 3B1.1 commentary n.4, it does not satisfy the requirement of control over another participant. <u>United States v. Harper</u>, 33 F.3d 1143, 1150-51 (9th Cir. 1994), <u>cert. denied</u>, 63 U.S.L.W. 3539 (Jan. 17, 1995).

The evidence does not support such a finding. Fred Delin, who knew Ronning socially, testified that Wimple ran the show. He was the President, occupied the corner office, and often gave Ronning directions. Truman Heddins, a WESTPAC client, preferred to talk to Wimple because Ronning simply spoke rhetoric. Heddins did not believe that Ronning could help him retrieve his advance fees. Thomas Rex Franklin, the only employee of WESTPAC who testified, told the court that Wimple was aware of most of the projects in the office but that Ronning had not seen ninety percent of them.

The Government attempts to show that Ronning was the controlling personality at WESTPAC because he had most of the contact with the clients. Ronning was the "front" man. The Government asserts that Wimple was nothing more than a bookkeeper. Nevertheless, a review of the record reveals constant references to Wimple and Ronning as partners. The mere fact that Ronning had more contact with clients than Wimple does not show that he had control or influence over Wimple. Contrary to the Government's argument, Wimple was not a puppet President. Rather, the reason Wimple stayed in the background appears to have been because he was not as smooth and likeable as Ronning. Wimple also had a temper. Franklin testified that he left WESTPAC after Wimple yelled at him for forty-five minutes. Heddins described Wimple as an "almost out of control type person," who became very irate during a meeting. Thus, it appears that Wimple did not have much contact with clients by his design; he let Ronning do most of the talking. Although Ronning had more client contact, he did not directly or indirectly

7

control Wimple. Even under our clearly erroneous standard of review, we conclude that the record read as a whole does not render plausible a finding that Ronning organized or led Wimple.

## CONCLUSION

For the foregoing reasons, we vacate Appellant's sentence for resentencing.

VACATED and REMANDED.