**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 96-20390
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS ALBERTO GIRALDO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

April 11, 1997

Before JOLLY, JONES, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Carlos Alberto Giraldo[1] appeals his

sentence, challenging the district court's upward adjustment to his

offense level for his role as an "organizer," pursuant to United

States Sentencing Guideline (U.S.S.G.) §3B1.1.  Concluding that the

district court reached the right result but for the wrong reasons,

we affirm.

I.

FACTS AND PROCEEDINGS

Giraldo's conviction stems from his participation in a drug

transaction staged by the Drug Enforcement Administration (DEA) in

---

[1]Giraldo's judgment of conviction identifies him by his alias,
Jouquin Rodriguez; however, the district court subsequently ordered
him to use the name Giraldo and to make any future filings in that
name.

connection with its investigation of the Alejandro Bustamante organization, a Colombian drug trafficking group attempting to deliver cocaine into the United States. The investigation began when an undercover cooperating individual (the CI) arranged for DEA agent William Snyder to meet organization insiders, co-defendants Edjar de Jesus Alvarez and Diego Fernando Mejia. Posing as the "contact man" who would transport and store the deliveries of cocaine, Snyder discussed doing a cocaine deal with Alvarez and Mejia. After some hesitation, Alvarez and Mejia agreed to pay Snyder up front for his services.

When a prior commitment prevented Snyder from completing the investigation, another DEA agent, Miguel Villafranca, continued the negotiations with Alvarez and Mejia. Villafranca and the CI met Mejia and Alvarez in a parking lot where Mejia and Alvarez inspected approximately one hundred kilograms of cocaine that Villafranca had brought in the trunk of his car. Giraldo was not present.

Several days later, Villafranca and the CI met Mejia, Alvarez, and — this time — Giraldo in another parking lot for a second inspection. While Giraldo made a phone call to persons whom agents suspected were money suppliers, Alvarez explained that Giraldo would pick up the cocaine after Alvarez paid the money. Mejia and the CI then got into the back seat of Villafranca's car, and Mejia inspected more cocaine samples. Another meeting was arranged for later that afternoon at a Captain Benny's restaurant, and the defendants agreed to bring a vehicle containing $200,000 in

exchange for approximately fifty-seven kilograms of cocaine. The defendants drove away followed by surveillance agents who saw Giraldo get out of the car at several locations to make more telephone calls.

At Captain Benny's, Villafranca was finally introduced to Giraldo. Alvarez gave Villafranca the keys to a Nissan Maxima with the money in the trunk. Alvarez wanted Giraldo or Mejia to go with Villafranca to pick up the cocaine but agreed instead to let the CI remain behind to ensure Villafranca's return.

Villafranca drove to the DEA offices and counted the money, which came up short. He loaded fifty kilograms of cocaine into the car and returned to Captain Benny's. As he approached the restaurant, the CI motioned for him to go to the Sheraton Grand Hotel across the street. In the hotel lobby, Villafranca asked Alvarez about the shortage in the money. Alvarez responded by contacting Giraldo and Mejia at Captain Benny's and telling them to bring the rest of the money. As Giraldo and Mejia attempted to leave Captain Benny's, they were arrested. Other DEA agents arrested Alvarez at the hotel.

A jury convicted Giraldo of one count of conspiracy to possess with intent to distribute more than five kilograms of cocaine, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and one count of aiding and abetting in an attempt to possess with intent to distribute more than five kilograms of cocaine, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 2.

According to the Presentencing Report (PSR) prepared by the

probation department, Giraldo admitted to the probation officer that he had obtained the money that was used to complete the drug transaction.  Specifically, the PSR stated that (1) Giraldo had contacted an individual known to be involved in illegal activities, (2) that individual did not want to become personally involved in the transaction, so he gave Giraldo a beeper number for another individual, and (3) the second individual delivered the money to Giraldo, who then provided it for the drug transaction.  The PSR recommended a two level increase in Giraldo's offense level for his role as an "organizer [who] significantly influenced the outcome of the criminal activities," based on his admission that he obtained the $180,000 that completed the drug transaction.

At the sentencing hearing, the district court adopted the PSR in full, stating that "[y]our position in this transaction clearly makes you an organizer, and your connection to the money source makes that obvious."  The district court imposed a two level increase in Giraldo's offense level for his role as an organizer, pursuant to U.S.S.G. §3B1.1(c), and sentenced him to concurrent 292-month terms of imprisonment and concurrent five-year terms of supervised release.  Giraldo timely appealed his sentence.

II.

ANALYSIS

A. STANDARD OF REVIEW

The district court's determination that a defendant is a U.S.S.G. §3B1.1 organizer is a factual finding which this court

**4**

reviews for clear error.[2]  A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole.[3]  This court reviews a sentencing court's application of the guidelines de novo.[4]

B. APPLICABLE LAW

An adjustment to the offense level may be made based on the role the defendant played in committing the offense.[5]  A two level increase is warranted "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" that involved fewer than five participants.[6]  An application note added to this section in 1993 provides:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one of more other participants.  An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.[7]

Although Giraldo was sentenced before the effective date of the amendment, this court may consider the amendment because it was

---

[2]United States v. Ronning, 47 F.3d 710, 711 (5th Cir. 1995)(citing United States v. Valencia, 44 F.3d 269, 272 (5th Cir. 1995)).

[3]Ronning, 47 F.3d at 711; Valencia, 44 F.3d at 272.

[4]United States v. Gross, 26 F.3d 552, 554 (5th Cir. 1994).

[5]U.S.S.G. Chapter 3, Part B, Introductory Commentary (1995).

[6]U.S.S.G. §3B1.1(c) (1995).

[7]U.S.S.G. §3B1.1, Application Note 2 (1995)(emphasis added). See also U.S.S.G. Amendment 500 (1993).

intended to clarify the application of a guideline.[8]

C. DID THE DISTRICT COURT ERR IN IMPOSING THE TWO LEVEL ADJUSTMENT?

As Giraldo offered no rebuttal evidence to contest the facts contained in the PSR, the district court properly accepted them as true and so must we.[9]  The PSR recited that:

> [Giraldo] was functioning on the periphery of this drug conspiracy.  However, in [his] statement to the probation officer relative to his role, he admittedly obtained the $180,000 that completed the drug transaction.  Without the recruitment of accomplices by [Giraldo] relative to the $180,000, the drug purchase could not have been completed.  Thus, based on the statement of [Giraldo], a two level increase is applied for his aggravating role in the offense, as the defendant is considered an organizer, whose role significantly influence the outcome of the criminal activities.

Adopting the PSR in full, the district court found that Giraldo was an organizer, based on his admission that he obtained the money to complete the drug transaction, and applied an upward adjustment to his sentence.

The government argues that the district court properly adjusted Giraldo's offense level, insisting that even if Giraldo did not organize other criminal participants, he may still be considered an organizer for purposes of an adjustment if he exercised management responsibility over a criminal organization's

---

[8]Gross, 26 F.3d at 555.

[9]The PSR generally bears sufficient indicia of reliability, and the district court may rely on it when making the factual determinations required by the guidelines. United States v. Vital, 68 F.3d 114, 120 (5th Cir. 1995).  The district court may adopt facts in the PSR without further inquiry if they have an adequate evidentiary basis and the defendant does not present rebuttal evidence. United States v. Valencia, 44 F.3d 269, 274 (5th Cir. 1995).

6

property, assets, or activities ("asset management exception").  We disagree.

In <u>United States v. Jobe</u>[10] we made clear that the asset management exception applies only when the district court makes an <u>upward departure</u> from the sentencing range and not when it makes an <u>upward adjustment</u> to the offense level.[11]  Indeed, the express language of the subject application note draws this distinction.

Insofar as the district court relied on the asset management exception to make an <u>upward adjustment</u> to Giraldo's offense level, it misapplied the guidelines.  That exception clearly applies to an <u>upward departure</u> only.  The PSR expressly concludes that there were "no aggravating or mitigating circumstances that would merit consideration for a <u>departure</u> in this case."

Nevertheless, we decline to vacate the district court's sentence, as we can say with assurance that the district court would have imposed an identical sentence even without relying on the asset management exception.[12]  The district court's finding that

_____

[10]101 F.3d 1046 (5th Cir. 1996).

[11]<u>Id</u>. at 1068 (when the district court does not order an upward departure, the asset management exception is unavailable to sustain the sentence enhancement on appeal).  <u>See also</u> <u>United States v. Greenfield</u>, 44 F.3d 1141, 1146 (2d Cir. 1995)("Thus, by negative implication, the Application Note seems clearly to preclude management responsibility over property, assets, or activities as the basis for an *enhancement* under §3B1.1(c).")(emphasis in original).

[12]<u>See</u> <u>Williams v. United States</u>, 503 U.S. 193, 203, 112 S. Ct. 1112 (1992)("[O]nce the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, <u>i.e.</u>, that the error did not affect the district court's selection of the sentence imposed.").  <u>See</u>

Giraldo was a §3B1.1(c) organizer was not clearly erroneous.  He was an organizer, not of assets, but of other criminal participants.  The PSR contained Giraldo's admission that he recruited the money suppliers for the drug transaction.  Furthermore, the application notes specifically instruct us to consider the recruitment of accomplices in determining whether the defendant was an organizer.[13]  As such, Giraldo cannot be heard to complain that he was not an organizer, and we hold that the district court's two level upward adjustment in Giraldo's offense level was lawful.

III.

CONCLUSION

For the foregoing reasons, Giraldo's sentence is AFFIRMED.

---

also United States v. Bryant, 991 F.2d 171, 178 n.9 (5th Cir. 1993); United States v. Elwood, 999 F.2d 814, 818 n.18 (5th Cir. 1993); and United States v. Salazar, 961 F.2d 62, 64 (5th Cir. 1992).  In addition, when the judgment of the district court is correct, this court may affirm for reasons not given by the district court and not advanced to it. Laird v. Shell Oil Co., 770 F.2d 508, 511 (5th Cir. 1985).

[13]U.S.S.G. §3B1.1, Application Note 4 (1995).