IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 7, 2007

Charles R. Fulbruge III
Clerk

———

No. 06-11229

———

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

SUNG BUM CHANG

Defendant-Appellant

———

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:05-CR-127-1

———

Before DENNIS, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Sung Bum Chang appeals the calculation of his offense level under the Sentencing Guidelines. We AFFIRM.

## I. FACTS AND PROCEEDINGS

On June 12, 2006, Chang pleaded guilty to one count of conspiracy in violation of 18 U.S.C. § 371 and one count of forced labor in violation of 18 U.S.C. § 1589. On October 18, 2006, Chang was sentenced to 120 months of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

imprisonment, three years of supervised release, restitution, and a special assessment fee.

Beginning on or about December 13, 2004, until April 26, 2005, when law enforcement officials raided Chang's home, he participated in a ring that smuggled women into the United States from South Korea. Two of the women indicated that they had met with brokers in South Korea who arranged for their travel to Canada. Guides took them across the United States-Canadian border on foot. After passing through Los Angeles, they were brought to Chang near Dallas.

Chang owned a club in Coppell, Texas, called Club Wa which was frequented by Korean businessmen and other Korean nationals. Chang coordinated with other members of the human trafficking network and paid the smuggling debts of the women whom he received through it. The women were required to live at his house and work at his club until they repaid their debts. Chang held the women's passports. He also executed contracts requiring them to repay their smuggling debts. The women needed Chang's permission to leave the house, which was equipped with a video surveillance system to monitor their entries and departures. One woman escaped from the house by leaping from a second story window and eventually contacted law enforcement. Chang's wife, Hyang Kyung Chang, collaborated in the scheme. Under Chang's direction, she helped supervise the women at their home, and she worked at Club Wa. Chang enlisted the support of employees at Club Wa to transport the women, and escorts monitored the women's movements. Chang fined the women for violating his rules, adding the fines to their debts. Between fifty and sixty women lived in Chang's home under similar arrangements between 2003 and 2005.

Seven women were living at Chang's residence when law enforcement officials raided it. All of the women were in the United States illegally, and they all spoke little or no English. Chang had taken their passports from them. All

of the women were in their late twenties or early thirties. Chang told one of the victims, GHH, that the contract to repay her smuggling debt was enforceable in the United States. GHH came from a village in South Korea of less than one hundred people. Her father died when she was three years old, and her family suffered severe economic hardship.

At sentencing, the district court added a four-point leader/organizer enhancement to Chang's offense level under U.S.S.G. § 3B1.1(a) (2005). The court also added a two-point vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1). Chang's offense level was 30, and his criminal history category was I. His Guideline range was 97–121 months, and he was sentenced to 120 months of imprisonment.

Chang appeals the calculation of this Guideline range, specifically challenging the addition of the four-point leader/organizer enhancement and the two-point vulnerable victim enhancement to his offense level.

## II. STANDARD OF REVIEW

This court reviews de novo the district court's interpretation of the Sentencing Guidelines. United States v. Angeles-Mendoza, 407 F.3d 742, 747 (5th Cir. 2005). Factual findings for sentencing are reviewed for clear error. United States v. Valencia, 44 F.3d 269, 272 (5th Cir. 1995). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." Id.

## III. DISCUSSION

A. § 3B1.1(a) organizer

"If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1(a). In deciding whether a defendant undertook an organizational or leadership role, the court should consider:

> the exercise of decision making authority, the nature of
> participation in the commission of the offense, the recruitment of
> accomplices, the claimed right to a larger share of the fruits of the

> crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

U.S.S.G. § 3B1.1 cmt. n.4. "To qualify for the four-level § 3B1.1(a) enhancement, a person must have been the organizer or leader of at least one other participant." United States v. Ronning, 47 F.3d 710, 712 (5th Cir. 1995).

The district court relied on United States v. Ventura, 353 F.3d 84, 89–90 (1st Cir. 2003), in which the First Circuit affirmed a § 3B1.1(a) enhancement when the defendant had been the "organizer or leader of a discrete part of the operation." That court's reasoning comports with U.S.S.G. § 3B1.1 cmt. n.4, which states that there can be more than one leader or organizer of a criminal conspiracy. While Ventura's holding is persuasive, Chang's role as the leader or organizer of the forced labor at Club Wa is sufficient to affirm the district court's decision.

Chang concedes that the criminal activity that was the subject of his conviction was otherwise extensive. He argues that he did not participate as a leader or organizer in the smuggling network. However, the district court did not rely solely on Chang's involvement in the smuggling network. Over a three year period, Chang organized the forced labor of between 50 and 60 women. Chang controlled the activities at Club Wa and directed his wife and club employees in the criminal activity related to Club Wa. In light of Chang's ownership of the club and testimony that the club had gross receipts of several million dollars, the district court's finding that Chang received a larger portion of the fruits of the criminal activity there was plausible. Also, the district court's finding of Chang's involvement in the human trafficking ring that provided women to work as forced labor at his club was plausible. While Chang was not in overall command of the human trafficking network, he did command the

criminal conspiracy that was the subject of his conviction, namely the forced labor at his club. Therefore, the district court's determination that Chang was the leader or organizer of criminal activity was not clearly erroneous.

B.     § 3A1.1 vulnerable victim

U.S.S.G. § 3A1.1(b) "applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. . . . Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." U.S.S.G. § 3A1.1 cmt. n.2. "A condition that occurs as a necessary prerequisite to the commission of a crime cannot constitute an enhancing factor under § 3A1.1." United States v. Moree, 897 F.2d 1329, 1335 (5th Cir. 1990). For example, "[b]ecause an alien's illegal status is a prerequisite to the crime of alien smuggling, it is error for a district court to find unusual vulnerability based on that status." United States v. Medina-Argueta, 454 F.3d 479, 482 (5th Cir. 2006). The forced labor statute is violated by whomever "knowingly provides or obtains the labor or services of a person . . . by means of the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1589.

The district court found that one victim, GHH, came from an impoverished background in a small village and spoke limited English. These factors and her illegal status made her particularly susceptible to Chang's criminal conduct. Specifically, the court found that Chang took advantage of GHH's background and immigration status when telling her that the contract to repay her smuggling debt was enforceable in the United States. The court found that illegal status was an unusual vulnerability that was present in only some victims of forced labor.

Chang argues that the district court did not find that GHH was unusually vulnerable, that she and other victims "made the conscious choice to cross into this country illegally, and that they came here voluntarily and of their own free

will in an effort to earn money." Chang also contends that the vulnerability criteria are already incorporated within the Guidelines, and that, according to Fifth Circuit precedent, those conditions are inherent in forced labor.

First, the district court's specific findings about GHH's unusual vulnerabilities are documented in the record, as are the court's findings of all of the women's limited ability to speak English and their illegal status. Second, the women's choice to violate the law of the United States does not preclude them from receiving its protections.

Third, Chang is incorrect in asserting that illegal immigration status is incorporated in the Guidelines for this offense. Illegal status is not a prerequisite to the violation of 18 U.S.C. § 1589, unlike the alien smuggling violations at issue in Angeles-Mendoza, 407 F.3d at 745. Chang's victims were more like the illegal alien victims in United States v. Garza, 429 F.3d 165, 168 (5th Cir. 2005), who were defrauded by defendants posing as immigration agents. In Garza, a vulnerable victim enhancement was proper because the victim's illegal immigration status was not a prerequisite to the crime and "was not taken into account by the base-level offense." Id. at 173.

The district court properly analyzed the vulnerability of the women forced to labor at Club Wa. Unlike the district court in Angeles-Mendoza, 407 F.3d at 747–48, the court here made specific findings about an individual victim of which Chang knowingly took advantage. See Garza, 429 F.3d at 173 (noting that the district court made findings of specific vulnerabilities of individual victims).

Because the district court's findings are plausible in light of the record and comport with this circuit's precedent, they are not clearly erroneous.

## IV.  CONCLUSION

Chang's sentence is AFFIRMED.