UNITED STATES of America, Appellee

v.

Perry A. GRAHAM, Appellant

Nos. 97–3138, 97–3139, and 97–3151.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 30, 1998.

Decided Dec. 22, 1998.

Pleasant S. Brodnax, III, appointed by the court, argued the cause and filed the brief for appellant Perry A. Graham.

Robert E. Sanders, appointed by the court, argued the cause and filed the briefs for appellant Terrence A. Terrell.

Mary E. Davis, appointed by the court, argued the cause and filed the brief for appellant Roger V. Smith.

Barbara A. Grewe, Assistant U.S. Attorney, argued the cause for appellee. On the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Mary-Patrice Brown, Lynn C. Leibovitz and Clark W. Metz, Assistant U.S. Attorneys.

Before: EDWARDS, Chief Judge, GINSBURG and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

In *United States v. Graham,* 83 F.3d 1466 (D.C.Cir.1996), we affirmed the convictions of Terrence Terrell, Perry Graham, and Roger Smith for various narcotics related offenses as members of the "Newton Street Crew," but vacated the sentences so that the district court could (1) make individualized Rule 32 findings on challenges to the Presentence Report, (2) make adequate findings on the volume of drug sales attributable to each appellant, and (3) explain the foundation for finding that Terrell played a managerial role in the conspiracy. Appellants now appeal from resentencing on their convictions for conspiracy to distribute a large volume of crack, each attempting to minimize his role in the conspiracy and thereby reduce his sentence. Our focus is on Terrell's contention that the district court erred in enhancing his base offense level by three levels under U.S.S.G. § 3B1.1(b) for serving as a manager or supervisor within the conspiracy. Because the government's evidence was deficient in that regard, and because we conclude that Graham's and Smith's contentions lack merit, as do Terrell's other contentions, we affirm the judgments of resentencing for Graham and Smith but vacate the adjustment of Terrell's base offense level and remand Terrell's case for resentencing.

## I.

The most relevant conviction for sentencing purposes was count one of the indictment, which charged conspiracy to distribute crack cocaine. The sentence on count one is the longest for each appellant; the remaining sentences run concurrently. Upon resentencing after remand, the district court made detailed findings about appellants' participation in the Newton Street crack distribution ring. The court then applied the 1995 Guidelines to impose the following sentences:

Terrell and Smith:

| | |
|---|---|
| Base Offense Level: | 38 |
| Managerial Role Adjustment: | +3 |
| Criminal Hist. Category: | I |
| Range: | 324–405 months |
| Sentence: | 324 months |

Graham:

| | |
|---|---|
| Base Offense Level: | 39 |
| Managerial Role Adjustment: | +3 |
| Criminal Hist. Category: | I |
| Range: | 360–Life |
| Sentence: | 360 months |

■ Under the 1995 Sentencing Guidelines, distribution of more than 1.5 KG of cocaine base ("crack") warrants a base offense level of 38. *See* U.S.S.G. § 2D1.1(c)(1). A defendant is responsible for the drugs that he personally distributed as well as the "reasonably foreseeable" distribution by "others in furtherance of [a] jointly undertaken criminal activity, that occurred during the commission of the offense of conviction,...." U.S.S.G. § 1B1.3(a)(1). The district court must determine weights by a preponderance of the evidence subject to appellate review for clear error. *See United States v. Lam Kwong-Wah,* 966 F.2d 682, 685–688 (D.C.Cir. 1992).

The district court found that Terrell was responsible for approximately 19 KG of crack, as follows: approximately 2 KG sold, 6.5 KG packaged, 6.5 KG distributed by co-conspirator Frank Lynch, and 4.5 KG distributed by Graham. As we understand Terrell's position, he generally challenges the district court's methodology for calculating distribution weights without proposing an alternative interpretation of the record that would reduce his liability below 1.5 KG. In any event, each of his arguments, save one, lacks merit.[1]

■ Terrell's sole persuasive challenge to his sentence arises from the district court's imposition of a three-level enhancement under U.S.S.G. § 3B1.1(b) for being a "manager or supervisor (but not an organizer or leader)" of the charged criminal activity. In essence, Terrell contends that the record shows only that he was a gofer rather than a manager, and that he therefore was insufficiently culpable to justify an enhancement.

■ The Sentencing Guidelines permit the district court to adjust base offense level because of a defendant's "aggravating role" in an offense. U.S.S.G. § 3B1.1. The magnitude of the enhancement varies with the

---

1. Terrell's contention that the district court failed to make required findings about the scope of his conspiratorial agreements with Lynch and Graham is belied by the record; the required findings appear in paragraphs eight through ten of the district court's findings of fact and conclusions of law at sentencing. Similarly, Terrell's implication that the district court erred by attributing drugs to Terrell that were sold prior to July 1990 in furtherance of a conspiracy distinct from the one for which he was convicted is belied by the court's express statement that drugs sold prior to July 1990 were not attributed to Terrell. *See* Sentencing Opinion at ¶ 1(a). To the extent that Terrell contends that the record is insufficient to justify an inference about the weight of drugs he sold in transactions alluded to but not described by witnesses, *see United States v. Badru,* 97 F.3d 1471, 1477 (D.C.Cir.1996), we need not decide whether the district court erred by attributing an extra 1.14 KG to Terrell because even without this increase, he would still be liable for more than enough cocaine base to justify his sentence.

culpability of the defendant: 4 levels for leading or organizing relatively extensive criminal activity; 3 levels for managing or supervising such activity; and 2 levels for leading, organizing, managing, or supervising relatively confined criminal activity. *See id.* An enhancement under § 3B1.1 must be supported by the preponderance of the evidence, *see United States v. Thomas,* 114 F.3d 228, 261 (D.C.Cir.1997), but such evidence may be circumstantial, *see United States v. Layeni,* 90 F.3d 514, 524 (D.C.Cir.1996). We review the district court's factual findings for clear error and accord "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see also United States v. Bapack,* 129 F.3d 1320, 1324 (D.C.Cir.1997).

According to the Guidelines, an average drug dealer who sold the same amount of crack as Terrell would have received an offense level of 38. Terrell, however, received an adjusted offense level of 41 because the district court concluded that his drug dealing activity was more culpable, based on his supervisory role within a large conspiracy, than that of many of his fellow drug dealers. This interpretation of the culpability standards in § 3B1.1(b) stretches the guideline beyond recognition.[2]

In applying § 3B1.1(b), the district court relied on three factual conclusions. First, the district court concluded that Terrell was a "lieutenant" in the Newton Street Crew.

The court's sole support in the record for this conclusion is the testimony of William Woodfork, who stated that Terrell was "sometimes" a lieutenant. Nothing in Woodfork's testimony explains how often Terrell acted as a lieutenant, what actions Terrell performed when purportedly acting as a lieutenant, whether all lieutenants acted alike, or—most importantly—why he believed that Terrell was a lieutenant, as opposed to some other type of cog in the Newton Street machine. Woodfork's testimony is therefore a vivid illustration of why conclusory labels are inadequate when assessing culpability under § 3B1.1. *See, e.g., Thomas,* 114 F.3d at 260; *United States v. Sostre,* 967 F.2d 728, 733 n. 5 (1st Cir.1992).[3] Hence this testimony cannot provide a basis for a § 3B1.1(b) enhancement.

■ Second, the district court found that Terrell acted "in effect" as a "block overseer" by directing potential drug buyers to fellow conspirators acting as sellers. The phrase "block overseer" does not appear to be part of the Newton Street lexicon, but, in any event, the title is substantially inflated given that the testimony cited by the district court shows only that Terrell, in the course of selling drugs, would point customers to the people carrying drugs.[4] We agree with the First and Tenth Circuits that the mere act of directing buyers to sellers does not constitute management or supervision warranting an

**2.** For reasons we do not understand, the government insists on characterizing its case as based on "ampl[e]" record evidence, *see* Appellee's Brief at 26, even though this court on direct appeal and the district court on resentencing noted that the government's position was weak. *See Graham,* 83 F.3d at 1482 (stating that § 3B1.1 issue was "close"); Sept. 26, 1997 Hearing Transcript at 4 (stating that government's evidence was "minimal").

**3.** At oral argument, the government provided an illustration of the mischief that labels can engender when divorced from context. Counsel stated:

... Woodfork's testimony [was] that at times, Mr. Terrell acted as a lieutenant. And the definition of lieutenant was you were next to the kingpin. You knew exactly what was going on. And you were in that role.

Oral Arg. Tr. at 19. Woodfork did use the word "lieutenant" to describe Terrell, but he provided no evidence that Terrell "knew exactly what was going on" or was otherwise "next to the kingpin." Nor does Woodfork's testimony indicate that he had a specific definition in mind when he referred to Terrell as an occasional lieutenant.

**4.** The district court cited the testimony of Frank Lynch, which was as follows:

Q. What was Terrence Terrell doing out there in July of 1990?
A. Selling drugs.
Q. And when you say selling drugs, what would you see him do?
A. Direct customers, you know, selling—if they want some, he would get it to them.
7/29/93 Transcript at 29. This testimony does not establish that Terrell was a "block overseer."

enhancement. *See Sostre*, 967 F.2d at 733; *United States v. Roberts*, 14 F.3d 502, 524 n. 37 (10th Cir.1993). Chapter 3B1.1(b) targets managers, not concierges and bellhops.

■ Third, the district court found that Terrell operated within a middle-zone of the Newton Street Crew hierarchy. The evidence supports this view of Terrell, but we conclude that not being at the bottom rung of a conspiracy is merely a necessary but not a sufficient condition to justify an enhancement under § 3B1.1(b).

Terrell was not one of the most junior members of the Newton Street Crew. The district court found that Terrell was part of a distribution "clique" with Graham (who is Terrell's cousin), Smith, and Lynch, under the overall leadership of Mark Hoyle and John McCollough. At the bottom rung of this clique were runners and "pipeheads" who assisted in the day-to-day operations of the conspiracy. Terrell was more than just a runner, and he apparently was not a "pipehead." Rather, Terrell on occasion provided a runner with crack and worked closely with individuals, such as Graham and Lynch, who were central figures in the Newton Street conspiracy. For example, Lynch testified that he stored drugs at Terrell's house and relied on Terrell to direct customers to him. This fact establishes that Terrell was a crack dealer; but it does not indicate that he supervised other dealers. Indeed, to the extent relevant at all, Lynch's testimony demonstrates that Terrell was a subordinate to Lynch, who was a lieutenant, rather than a lieutenant in his own right. Likewise, the fact that Terrell is Graham's cousin is, by itself, insufficient to prove that Terrell acted as a manager or supervisor. *See Roberts*, 14 F.3d at 524.

Terrell differed from his co-defendants in material respects. For example, witnesses testified that Terrell was essentially a 'wannabe' who liked hanging out with his drug dealing friends and relatives, and wearing flashy clothes purchased with drug money, but who could not be trusted with operational control over the enterprise. Indeed, when Terrell asked Hoyle to supply him with drugs, Hoyle refused because Terrell was not ready; a lieutenant intervened on Terrell's behalf, but was forced to pay Hoyle $1,000 compensation when Terrell "messed up." This incident occurred at a relatively early date in the conspiracy, and there is no evidence to suggest that Terrell ever redeemed himself or gained more responsibility as time passed. This behavior is also consistent with testimony that one lieutenant cut off his distribution arrangement with Terrell because Terrell was incompetent; he was too "lazy" to sell drugs and could not protect the drugs that were entrusted to him. Of course, characterizing Terrell as a "wannabe" does not excuse his conduct; wannabes who break the law warrant incarceration. The question is whether he falls within the definition of "manager or supervisor" in § 3B1.1(b).

Neither the district court nor the government has cited any evidence to dispel our view of Terrell as simply a barnacle clinging to the outer hull of middle management. The record is devoid of any evidence that Terrell received extra compensation for serving as a manager, disciplined any lower ranking member of the conspiracy, altered the conspiracy's policies or procedures in any respect, provided guidance to senior managers or subordinates, issued any orders on behalf of the conspiracy, or otherwise held himself out as a link in the chain of command. All the record shows is that Terrell sold drugs and worked closely with others who sold drugs while occasionally assisting with drug sales by runners and pipeheads. This behavior is consistent with that of a drug dealer subject to sentencing at an offense level of 38, but does not justify a three level upward adjustment. *See United States v. Glinton*, 154 F.3d 1245, 1260 (11th Cir. 1998).

Nevertheless, the government contends, and the district court apparently agreed, that the mere fact that Terrell was not the most junior person in the Newton Street Crew renders him a manager of those beneath him in the Crew's "hierarchy." According to the government, the conspiracy in which Terrell was a member consisted of numerous "stra-

ta," and Terrell occupied a stratum above pipeheads and some of the runners. The government then argues that because it can draw a vertical line on an organizational chart from some conspirators to Terrell, Terrell must be a manager or supervisor within the meaning of § 3B1.1(b).

There is, however, nothing to indicate that the Sentencing Commission intended § 3B1.1(b) analysis to devolve into a hollow exercise in spatial geometry. Rather, the Commission designed § 3B1.1(b) to distinguish between defendants based on "relative responsibility" and has provided substantive factors to assist courts in applying the guideline. *See* U.S.S.G. § 3B1.1 background note. These factors include the defendant's

> exercise of decisionmaking authority, the nature of his participation in the commission of the offense, his recruitment of accomplices, any claimed right to a larger share of the fruits of the crime, the degree of his participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control or authority he exercised over others.

*Thomas,* 114 F.3d at 261.[5] No one factor is dispositive. *See id.*; U.S.S.G. § 3B1.1 application note 4. These factors impose a meaningful limit on prosecutorial and judicial discretion to enhance sentences, and cannot be read to create a formulaic sentencing methodology. As the Seventh Circuit has observed, "One's status as a middleman in a drug distribution chain does not, standing alone, make one a manager or supervisor," *United States v. Thompson,* 944 F.2d 1331, 1349 (7th Cir.1991); and, as the First Circuit noted, being an "essential" participant in a

conspiracy is not alone sufficient to trigger § 3B1.1(b), *Sostre,* 967 F.2d at 733.

The more plausible reading of § 3B1.1 is that it creates three relevant tiers for conspiracies that are "extensive": a tier for leaders and organizers, a tier for managers and supervisors, and a tier for everyone else. *See* U.S.S.G. § 3B1.1 and application notes. When confronted with a heavily stratified conspiracy, a court must superimpose the § 3B1.1 framework over the organizational chart of the conspiracy and, using the factors noted above, decide where to draw the two relevant lines that determine who qualifies for a § 3B1.1 enhancement. All persons receiving an enhancement must exercise some control over others, *see United States v. Baylor,* 97 F.3d 542, 548 (D.C.Cir.1996); *United States v. Kelley,* 36 F.3d 1118, 1129 (D.C.Cir. 1994),[6] but we do not discern any basis in the guidelines for enhancing the sentence of every participant in a conspiracy who does not reside in its bottom layer. In other words, not all hierarchical distinctions among offenders matter for sentencing.

Consequently, while Terrell may have operated at a different level than some of his colleagues, this fact alone did not make him a manager or supervisor. Because the record does not provide any other evidence supporting an enhancement, *cf. Thomas,* 114 F.3d at 261–62, the district court could not properly find that Terrell is a manager or supervisor within the meaning of § 3B1.1(b) as he was not significantly more culpable than other crack dealers within the Newton Street Crew. We therefore vacate Terrell's sentence and remand his case for resentencing.

---

**5.** The court in *Thomas* adopted these factors nearly verbatim from application note 4 to § 3B1.1. Technically, application note 4 is not directly applicable because the note governs in cases in which the court must distinguish an organizer or leader from a manager or supervisor. By contrast, this case—like *Thomas*—requires distinguishing a manager or supervisor from a mere participant in a crime. The factors enumerated in application note 4 nonetheless apply here as well because the two inquiries differ only in degree rather than in kind. Wheth-

er a court must distinguish a manager from a participant or a leader from a manager, it must rely on factors that parse defendants based on "relative culpability." *Thomas,* 114 F.3d at 261. The factors in application note 4 are tailored to this end, and therefore aid our analysis in the present case.

**6.** An upward departure, as opposed to an adjustment, may be warranted for offenders who manage property, assets, or activities rather than people. *See* U.S.S.G. § 3B1.1 application note 2.

## II.

██ Graham's and Smith's contentions require only brief discussion. We find no plain error by the district court in not holding an evidentiary hearing to permit cross-examination of witnesses whose testimony was necessary to determine the quantity of drugs for which Graham would be held liable under U.S.S.G. § 2D1.1(c). *See* U.S.S.G. § 6A1.3 commentary; *United States v. Plunkett,* 125 F.3d 873, 874 (D.C.Cir.1997). Our review of the record shows no reason, and Graham has not identified any, to conclude that an evidentiary hearing would have produced relevant information not otherwise available to the district court. *See United States v. Olano,* 507 U.S. 725, 735, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); Fed.R.Crim.P. 32(c).

██ Nor is there merit to Graham's contention that the government failed to comply with an agreement that would have limited his sentence; the government proffered at a pre-trial detention hearing that Graham had distributed approximately 130 grams of crack, but there is nothing to suggest that the government represented that its proffer accounted for all of the drugs that Graham had distributed, as opposed to some threshold amount sufficient to warrant pre-trial detention, much less that the government would have been bound by such a proffer had its proof at trial differed. In any event, because Graham failed to raise any claim of detrimental reliance at resentencing, we review only for plain error, and find none.

██ Smith's contention that in enhancing his base offense level by three levels to account for his managerial role in the Newton Street Crew, the district court relied in part on the testimony of William Woodfork, who has purportedly recanted his testimony, gains naught for Smith. Even without Woodfork's testimony, the record demonstrates that Smith frequently was a manager and supervisor within the drug distribution conspiracy for which he was convicted. For example, Smith gave crack to "pipeheads" who would sell it and give him the proceeds, watched over "pipeheads" while a colleague was away, "oversee'd sales" for a senior conspirator, collected money from runners, and was filmed—and thus observed by the district court[7]—directing drug transactions by subordinate runners. Hence, the district court's factual conclusions and application of the guidelines to the facts merit deference. *See United States v. Harris,* 959 F.2d 246, 266 (D.C.Cir.1992); 18 U.S.C § 3742(e).

Accordingly, we affirm the sentences of Graham and Smith but vacate Terrell's sentence and remand for resentencing; while district courts may sentence convicted drug dealers to long prison terms specified in U.S.S.G. § 2D1.1, only an especially culpable sub-class of dealers, as defined in § 3B1.1, are singled out by the Commission for incarceration for an even longer time, and here the government's evidence failed to establish that Terrell fell into this sub-class.

---

7. Smith cites testimony that provides alternative explanations for the events on tape, but the district court heard this testimony and rejected it in favor of its own direct observations. Based on the record before us, we lack any foundation for disputing the district court's characterization of visual images that it witnessed.