UNITED STATES of America,

v.

Analin PACHECO, Defendant.

No. Crim.A. 98–334–4.

United States District Court, E.D. Pennsylvania.

Sept. 15, 1999.

Frank C. Barbieri, U.S. Attorney's Office, Philadelphia, PA, for U.S.

Lynanne B. Wescott, Saul, Ewing, Remick & Saul, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Analin Pacheco pled guilty before this court to one count of conspiracy to distribute cocaine base (more than 50 grams) and heroin (more than 1000 grams), in violation of 21 U.S.C. § 846. She now puts forth several objections to the pre-sentence report. She argues that she should not receive an upward adjustment of three levels for having played a managerial role. She also requests a downward departure for extraordinary circumstances pursuant to U.S.S.G. § 5K2.0 and suggests that she was the victim of coercion or duress such that she should receive a departure. *See* U.S.S.G. § 5K2.12. Finally, she suggests that the court should grant the substantial assistance motion submitted by the government. The court will consider each point in turn.

*Enhancement of Offense Level for Role*

 Pacheco contends that she was an "apprehensive caretaker" rather than a manager or organizer of the conspiracy because she was effectively under the control of Francis Santos, her common law husband. Santos paid "rent" to Ernesto

Muniz, one of Pacheco's co-defendants, and supplied and sold heroin in the 3100 block of Hartville Street in North Philadelphia.[1] Pacheco assisted Santos until he fled to the Dominican Republic after his alleged involvement in a homicide, at which point Pacheco took over the heroin operation on Hartville Street, supplying heroin, collecting the proceeds, and paying rent to Muniz. While Pacheco contends in her Sentencing Memorandum that she was only involved in the conspiracy for a limited time after Santos fled the country, this contradicts her statement at her guilty plea that she assisted Santos until he fled, and ran the heroin operation after that time.[2] Although the court is sympathetic to her allegations of abuse by Santos, Pacheco's participation in the conspiracy after he fled the country was significant. Even accepting Pacheco's contention that she was actively involved for only three to four months, during that time she was responsible for supplying the heroin sold by the conspiracy's street level dealers, as well as ensuring that the dealers would be allowed to operate on Hartville Street by her payments to Muniz. Thus, her involvement as a manager warrants a three-level increase under U.S.S.G. § 3B1.1(b).[3] *Cf. United States v. Hunter,* 52 F.3d 489, 491–94 (3d Cir.1995) (affirming enhancement as manager or supervisor due to defendant's role in conspiracy without addressing her contention that her co-defendant assumed "total control" over her).

*Downward Departures under U.S.S.G. §§ 5K2.0 and 5K2.12*

 The court has discretion to depart from the Sentencing Guidelines if the court

---

1. It is uncontested that Pacheco had no involvement in the cocaine base operations of the conspiracy and therefore that aspect of the conspiracy is not considered in her sentencing. Conservatively calculated, Pacheco was involved in distributing at least one kilogram of heroin.

2. Pacheco also argues that she did not supervise five or more participants. However, the Guidelines only require that there be five or more participants in the criminal activity. *See* U.S.S.G. § 3B1.1(b). Again, at her guilty

plea she did not contest the government's identification of five other participants in the heroin distribution conspiracy, to wit, Muniz, Santos (a/k/a "Gringo"), German Ortiz, Yolanda Roman and William Alvelo.

3. Because the court finds that Pacheco had a managerial role, she is not eligible for the "safety valve" or the two level decrease thereunder. *See* U.S.S.G. §§ 2D1.1(b)(6), 5C1.2; 18 U.S.C. § 3553(f).

finds "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration" by the guidelines. *See* 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. Before a departure is permitted, the court must find that aspects of the case are "unusual enough for it to fall outside the heartland of cases in the Guideline." *See Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

Pacheco argues she should be granted a downward departure based on the danger that accompanied her cooperation, the conditions of her confinement, her family responsibilities, her coercion by Santos, and her agreement to deportation. The danger accompanying Pacheco's cooperation is taken into consideration in granting the motion for downward departure for substantial assistance. *See infra.* However, the record before the court does not permit a section 5K2.0 departure on this basis. The court also finds that the other factors advanced by Pacheco are not so unusual to fall outside of the heartland of cases.

 First, the conditions of Pacheco's confinement do not warrant a departure. While exceptionally hard conditions of confinement might qualify for a departure, *see United States v. Sutton*, 973 F.Supp. 488, 492–94 (D.N.J.1997), *aff'd* 156 F.3d 1226 (3d Cir.1998), a defendant must demonstrate to the court that the conditions compare unfavorably to those suffered by other inmates. *See id.* at 494–95 (rejecting departure because defendant did not show that his conditions of confinement deviated from the norm); *United States v. Ogembe*, 41 F.Supp.2d 567, 571 (E.D.Pa.1999) (same). Pacheco alleges federal facilities for women are generally less favorable than those for men, but she does not indicate that her confinement is worse that of other female inmates in general, or the other women in her facility in particular. There is not enough evidence on the record to support a finding that Pacheco's incarceration is so extraordinarily bad to allow this court to depart from the Sentencing Guidelines, although the facilities at the Warsaw, Virginia jail do sound deplorable and the circumstances should be reviewed by the Bureau of Prisons.

 Second, a departure because of family circumstances cannot be granted. In order to be granted such a departure, a defendant must show that his or her incarceration would have an extraordinary impact on family members. *See, e.g., United States v. Gaskill*, 991 F.2d 82, 86 (3d Cir. 1993) (finding that extraordinary family circumstance existed because defendant was the sole caretaker of his mentally ill wife); *United States v. Shoupe*, 929 F.2d 116, 121 (3d Cir.1991) (holding that defendant's separation from his young son did not justify a downward departure); U.S.S.G. § 5H1.6 (stating that family ties and responsibilities are not ordinarily relevant in considering a downward departure). Here, Pacheco has not alleged that her young child, who is being cared for by Pacheco's mother, is suffering unusually because of their separation, and thus there are no grounds for departure due to family circumstances. Many, if not most, defendants have children, and separation alone will not usually permit a departure on this basis.

 Third, Pacheco's request for a departure under U.S.S.G. § 5K2.12 due to "serious coercion, blackmail or duress" is denied. Although the standard of coercion is broader than that needed to prove a complete defense at trial, a defendant still must prove duress at the sentencing by a preponderance of the evidence to qualify for such a departure. *See United States v. Cheape*, 889 F.2d 477, 480–81 (3d Cir. 1989). A defense of duress requires a defendant to show an immediate threat of death or serious bodily injury, a well-grounded fear that the threat will be carried out, and no reasonable opportunity to escape the threatened harm. *See United States v. Santos*, 932 F.2d 244, 249 (3d Cir.1991). A defendant requesting a sen-

tencing departure for duress need not show proof of immediacy or inability to escape, nor is the feared injury the defendant must show limited to bodily injury. *See Cheape,* 889 F.2d at 480. Moreover, the Sentencing Guidelines allow a court to adopt a subjective standard for determining duress, rather than the objective standard needed to prove duress as a defense. *See United States v. Ezeibuaku,* Crim. A. No. 94–42, 1995 WL 263983, at *4 (D.N.J. May 3, 1995); U.S.S.G. § 5K2.12. However, the record before the court regarding the extent and degree of the alleged abuse and coercion of Pacheco by Santos consists of general allegations of abuse and is simply not sufficient to support a departure on such grounds.

Finally, Pacheco's offer to agree to immediate deportation does not provide a basis for a departure. A district court cannot depart from the guidelines based on an offer to agree to deportation unless the Attorney General requests such a departure and the defendant has a non-frivolous defense to deportation. *See United States v. Marin–Castaneda,* 134 F.3d 551, 555 (3d Cir.), *cert. denied,* 523 U.S. 1144, 118 S.Ct. 1855, 140 L.Ed.2d 1103 (1998). In Pacheco's case, neither condition has been met. *See* 8 U.S.C. § 1227(a)(2)(B) (mandatory deportation for any alien who is convicted of a violation of the law relating to a controlled substance).

*Downward Departure for Substantial Assistance*

The court will, however, grant the government's request for a downward departure for substantial assistance. Pacheco's early cooperation, the aid she provided to the government, and the risk of danger to herself and her family due to her assistance provide the court with ample grounds to depart from the Sentencing Guidelines under U.S.S.G. § 5K2.0.

An appropriate order follows.

**AND NOW,** this 15th day of September, 1999, upon consideration of the Defen-dant's Sentencing Memorandum, the Government's Sentencing Memorandum and Motion for Downward Departure under U.S.S.G. § 5K2.0, and after a hearing, it is hereby **ORDERED** that

1. The defendant's request not to receive a three-level enhancement for her role in the offense is **DENIED;**

2. The defendant's requests for downward departures pursuant to U.S.S.G. §§ 5K2.0 & 5K2.12 are **DENIED;**

3. The government's motion for a downward departure due to substantial assistance is **GRANTED.**