# UNITED STATES of America

v.

## German ORTIZ, Defendant.

### Criminal Action No. 98–334–12.

United States District Court,
E.D. Pennsylvania.

May 24, 2000.

Francis C. Barbieri, Jr., U.S. Attorney's Office, Philadelphia, PA, for plaintiff.

Eric W. Sitarchuk, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Defendant German Ortiz pled guilty before this court to one count of conspiracy to distribute in excess of fifty grams of cocaine base ("crack") and one kilogram of heroin, in violation of 21 U.S.C. § 846, and one count of distribution of heroin within 1,000 feet of a public school, in violation of 21 U.S.C. § 860.[1] Now before the court is defendant's objection to the sentencing guidelines calculations in his Presentence Investigation Report (PSI) and his request for a downward departure from the applicable sentencing range for post-offense rehabilitation. By separate Order of even date, the court granted the government's motion for a departure from the sentencing guidelines for substantial assistance, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). Thus, the court may impose a sentence below the guideline range and the applicable statutory mandatory minimum of five years.

### I. Background

Ortiz was a member of an organization that controlled the crack cocaine and heroin trade on the 3100 block of Hartville Street in North Philadelphia from the summer of 1996 until 1998. The organization sold drugs twenty-four hours a day and employed sellers in three shifts. Ortiz joined the organization in 1997, beginning as a street seller of heroin and eventually becoming a shift boss on the heroin side of the organization.[2] As a shift boss, Ortiz was responsible for delivering heroin to

1. In his plea agreement, Ortiz stipulated that he was responsible for possession with intent to distribute at least 100 grams, but less than 400 grams, of heroin.

2. Members of the organization also refer to this position as "caseworker."

the street sellers, notifying co-defendant Analin Pacheco, a.k.a. Rosa Alfonseca, when more drugs were needed, and delivering the proceeds from the street sales to her. Pacheco's common law husband, Francis Santos, allegedly paid "rent" to co-defendant Ernesto Muniz in order to sell heroin on Hartville Street. Pacheco assisted Santos until he fled the country, at which point she took over the heroin sales, supplying the drugs, collecting the proceeds, and paying rent to Muniz.[3]

Although Ortiz never abused heroin or crack, he began using marijuana when he was eleven. By 1993, he was emotionally and psychologically dependent on the drug, needing it in order to sleep and immediately again upon awaking. After his arrest on March 31, 1998, on charges related to the instant offenses, Ortiz began drug treatment, and he has not used illegal substances since completing the program. All twenty-two of the urine samples submitted by Ortiz while under the supervision of Pretrial Services were negative.

Ortiz, who has a tenth-grade education, worked sporadically at a variety of legitimate jobs prior to his arrest on the instant offenses and became involved with the Hartville Street organization during a six-month period of homelessness. Upon his release pending trial in this matter, Ortiz worked at Wilson's Famous Blue Ribbon Meats as a sausage maker for just over a year. He left that job for a better position with another company that manufactures cigars. Most recently, Ortiz relocated and found a better-paying job as a handyman closer to his new home. Both of his former employers submitted letters stating that Ortiz was a valued employee; the letter from Wilson's was also signed by twenty of Ortiz's former co-workers. *See* Def. Sentencing Mem. Exs. A, B.

3. *See United States v. Pacheco,* 67 F.Supp.2d 495, 497 (E.D.Pa.1999).

4. As noted in the Addendum to the PSI, the defendant's objection to paragraph sixty-six of

According to the PSI, the defendant's total offense level is 27 and his criminal history category is I, resulting in a sentencing range of 70 to 87 months.

II. Discussion

A. Guidelines Objections

The defendant makes two objections to the guideline calculations in the PSI: that he was not a supervisor or manager in the organization and that he should be granted a two-level "safety valve" downward adjustment in his offense level.[4]

1. Supervisory Role Adjustment

Ortiz objects to the two-level upward adjustment for his role as a supervisor that the Probation Office awarded because of the defendant's position as a shift boss in the Hartville Street organization. *See* PSI ¶ 55; *see also* U.S.S.G. § 3B1.1(c) ("If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels").

"Courts which have addressed the issue of supervision have required that, to be a supervisor, there must be some degree of control over others involved in the commission of the offense." *United States v. DeGovanni,* 104 F.3d 43, 46 (3d Cir.1997) (citations, italics omitted); *see also* U.S.S.G. § 3B1.1 commentary, app. note 2 ("To qualify for an adjustment under this section, the defendant must have been the . . . manager or supervisor of one or more other participants."); *United States v. Hunter,* 52 F.3d 489, 492 (3d Cir.1995). Other factors that a court should consider when determining whether a defendant merits a role enhancement are:

(1) the exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the

the PSI is simply a clarification that the three arrests mentioned in the report do not reflect any misconduct independent of the offenses of conviction.

recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity[.]

*Hunter,* 52 F.3d at 492 (citing U.S.S.G. § 3B1.1 commentary, app. note 4).[5] The government bears the burden of proving, by a preponderance of the evidence, that this upward adjustment should apply. *See United States v. Evans,* 155 F.3d 245, 253 (3d Cir.1998); *United States v. McDowell,* 888 F.2d 285, 291 (3d Cir.1989).

 The record does not support a finding that Ortiz acted as a supervisor for the heroin side of the Hartville Street organization. The PSI and government submissions identify Ortiz as a seller who became a shift boss and who, in the latter position, delivered the heroin he received from Pacheco and others to the street sellers, collected the proceeds from the sales, and delivered these proceeds to Pacheco.[6] *See e.g.,* PSI ¶ 43; Indictment, Count I ¶ 9; Gov't Conspiracy Outline Mem. at 14. The government summarily states that Ortiz "ran" a shift, Gov't Change of Plea Mem. at 4, and argues that Ortiz must have instructed the street sellers regarding how much money they owed, when to have the money ready for collection, and where to meet in order to transfer the funds. At the sentencing hearing the government relied solely on its argument that Ortiz's position as a conduit between the street sellers and those higher in the Hartville Street organization implicitly required that he exercised authority over the sellers. It did not present any evidence that Ortiz

actually controlled anyone. Nor did the government present evidence that Ortiz displayed any of the other attributes of a manager or supervisor identified in *Hunter.* For example, there is no evidence that Ortiz recruited others for the organization, that he received a larger share of the profits from the heroin sales because he was a shift boss, or that he had any significant decision-making authority. While Ortiz had greater responsibility than street sellers, the fact that he was entrusted with a portion of the Hartville Street organization's drugs and money does not, in itself, transform him into a supervisor for the purposes of a role enhancement. Nor does the fact that, as a shift boss, Ortiz was higher in the organization's structure than the street sellers necessarily compel a finding that he warrants the enhancement. *See United States v. Graham,* 162 F.3d 1180, 1184–85 (D.C.Cir. 1998) ("[W]e do not discern any basis in the guidelines for enhancing the sentence of every participant in a conspiracy who does not reside in its bottom layer").

The defendant correctly argues that the role he played in the organization is similar to that played by defendant Terrell in *Graham.* In that case, Terrell allowed others who were higher in the conspiracy to store drugs at his home, helped steer buyers to street sellers, and occasionally supplied the sellers. Because there was no evidence that Terrell actually supervised or managed others, "received extra compensation ..., disciplined any lower ranking member of the conspiracy, altered the conspiracy's policies or procedures in

---

**5.** The Probation Office argues that the factors listed in application note four can only be utilized to distinguish a leader who warrants a four-level increase pursuant to section 3B1.1(a) from a manager supervising five or more individuals who warrants three-level increase pursuant to section 3B1.1(b). *See* Addendum to PSI. Such an argument is belied by the court's analysis in *Hunter,* in which the Third Circuit assumed without discussion that the application note four factors are relevant in determining whether a defendant warrants a section 3B1.1(c) two-level increase. *See id.,*

52 F.3d at 492; *see also, e.g., United States v. Cannon,* 41 F.3d 1462, 1467 (11th Cir.1995) (applying, without discussion, application note four factors to a section (c) enhancement).

**6.** Pacheco received a three-level upward adjustment, pursuant to section 3B1.1(b), for her role as a manager or supervisor who exercised control over more than five other people. *See Pacheco,* 67 F.Supp.2d at 497.

any respect, provided guidance to senior managers or subordinates, issued any orders on behalf of the conspiracy, or otherwise held himself out as a link in the chain of command," the court of appeals held that the trial court erred when it determined that Terrell was a manager or supervisor. *Graham,* 162 F.3d at 1184–85. While the court will not go as far characterize Ortiz as "simply a barnacle clinging to the outer hull of middle management," *id.* at 1184, it finds that, as in *Graham,* there is insufficient evidence to conclude that the defendant had managerial or supervisory control over others in the organization. A two-level upward adjustment for Ortiz's role in the offense, therefore, is not warranted.[7]

### 2. "Safety Valve" Adjustment

■ Ortiz argues that because he is not a manager or supervisor, he qualifies for a two-level decrease in his offense level. In order to receive this downward adjustment, a defendant must have a pre-adjustment offense level of at least 26 and meet the "safety valve" criteria set forth in

U.S.S.G. § 5C1.2. *See* U.S.S.G. § 2D1.1(b)(6). However, section 5C1.2 only applies to certain enumerated drug offenses: it does not apply to one of the offenses to which Ortiz pled guilty, distribution of a controlled substance within 1000 feet of a school in violation of 21 U.S.C. § 860. *See* U.S.S.G. § 5C1.2; *cf. United States v. McQuilkin,* 78 F.3d 105, 108–09 (3d Cir.1996) (holding that relief under 18 U.S.C. § 3553(f), the statutory safety valve provision, is not available to defendants convicted of a violation of 21 U.S.C. § 860 because that offense is excluded from the list of offenses to which the statutory safety valve applies). Accordingly, Ortiz cannot receive a two-level safety valve downward adjustment to his offense level.

### B. Post–Offense Rehabilitation

■ Ortiz argues that his post-offense conduct is so extraordinary as to warrant a departure.[8] In *United States v. Sally,* 116 F.3d 76 (3d Cir.1997), the Third Circuit held "that post-offense rehabilitation ef-

---

**7.** The court recognizes that, according to the guidelines commentary, "[a]n upward departure may be warranted ... in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibilities over the property, assets, or activities of the criminal organization." U.S.S.G. § 3B1.1 commentary, app. note 2. The court, however, exercises its discretion and declines to depart upward. While Ortiz was given limited responsibility over the organization's assets, he essentially played the role of a trusted delivery person rather than manager of its assets or activities.

**8.** A court may depart downward from the applicable guideline range if it finds "a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0 A court must first determine whether the departure factor is forbidden, discouraged, or unmentioned by the Guidelines. *See Koon v. U.S.,* 518 U.S. 81, 94–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Iannone,* 184 F.3d 214, 226–27 (3d Cir. 1999) (detailing 5K2.0 departure analysis to

be employed after *Koon* ); *United States v. Sally,* 116 F.3d 76, 80 (3d Cir.1997) (same). If the factor is forbidden, the court cannot use it as a basis for departure. *See Koon,* 518 U.S. at 93, 116 S.Ct. 2035. If the factor is encouraged and not already taken into account by the applicable guideline, the court may depart on that basis. *See id.* at 96, 116 S.Ct. 2035. If the factor is discouraged, encouraged but already taken into the account by the applicable guideline, or listed as an appropriate consideration in applying an adjustment, a court·can depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon,* 518 U.S. at 96, 116 S.Ct. 2035. If the factor is unmentioned, "the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole ... decide whether [the factor] is sufficient to take the case out of the Guideline's heartland." *Iannone,* 184 F.3d at 226–27 (citation, punctuation omitted); *see also Koon,* 518 U.S. at 96, 116 S.Ct. 2035. Post-offense rehabilitation is a factor that is encouraged but already taken into account by the guidelines. *See Sally,* 116 F.3d at 81.

forts, including those which occur post-conviction, may constitute a sufficient factor warranting a downward departure provided that the efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply." *Id.* at 80. These rehabilitation efforts must be remarkable, "indicate real, positive behavioral change," and demonstrate the defendant's "commitment to repair and rebuild" his or her life. *Id.* at 81; *see also United States v. Kane*, 88 F.Supp.2d 408, 409 (E.D.Pa.2000) (noting it is inappropriate to grant a departure where the defendant simply engages in good conduct consistent with pre-offense activities; also noting that a court should consider the voluntary nature of the defendant's conduct).

■ Prior to his arrest for the instant offense, Ortiz was a heavy user of marijuana who was psychologically and emotionally dependent on the drug. While he worked sporadically, his steadiest employment was as a seller and shift boss for the Hartville Street organization. After his arrest, Ortiz entered treatment, and, as evidenced by the negative urine samples submitted to Pretrial Services, he has not used illegal substances since completing the program. Moreover, he has a solid work history since his release from custody pending sentencing: while he has changed jobs several times, each change was for a better opportunity. According to his two most recent former employers, Ortiz was an exemplary employee with a good work ethic. The defendant has successfully cut his ties with his former lifestyle of drug dealing and nearly incessant marijuana use. As a now sober, hardworking, and dependable member of society, Ortiz has demonstrated a positive and lasting transformation in his behavior that is extraordinary. *Compare United States v. Hancock*, 95 F.Supp.2d 280, 285–86 (E.D.Pa.2000) (declining to grant a *Sally* departure based on defendant's post-offense work record, where defendant was a college graduate and held noteworthy employment prior to arrest), *with Kane*, 88 F.Supp.2d at 411–13 (granting *Sally* departure for defendant with extensive criminal history and long-standing addiction because of defendant's successful drug treatment and break from previous lifestyle and behavior), *and United States v. Turner*, No.Crim.A. 95–520–01, 2000 WL 307355, at *2 (E.D.Pa. Mar.24, 2000) (granting *Sally* departure for defendant with extensive arrest record, no history of pre-offense gainful employment, and long-time drug and alcohol abuse where his post-offense conduct included voluntarily entering in-patient treatment, remaining free from substance abuse for six years, and achieving position of trust and responsibility in the first job he ever held). Accordingly, Ortiz's request for a departure based on his post-offense rehabilitation is granted.

## III. Conclusion

The government has failed to meet its burden of proof that the defendant supervised or controlled others in the Hartville Street organization such that a two-level enhancement for Ortiz's role in the offense is warranted. Nevertheless, Ortiz is not eligible for a two-level downward adjustment because he pled guilty to an offense which is excluded from the safety valve provision of the guidelines. Finally, Ortiz has demonstrated extraordinary post-offense rehabilitation and will receive a *Sally* departure.

An appropriate order follows.

### ORDER

**AND NOW**, this 24th day of May, 2000, upon consideration of defendant's objection to the Pre-sentence Investigation Report (PSI) and request for a downward departure for post-offense rehabilitation, both of which are contained in his sentencing memorandum, and the response there, it is hereby **ORDERED** as follows:

1. This memorandum and order shall be appended to the PSI in this case and

shall accompany any copy of the PSI thereafter made available to the Bureau of Prisons;

2. The defendant shall not receive a two-level enhancement in his offense level for his role in the offense as a supervisor. The defendant's request for a two-level safety valve departure pursuant to U.S.S.G. § 2D1.1(b)(6) is **DENIED.** Accordingly, his total offense level is 25 and the sentencing range is 57 to 71 months imprisonment; and

3. The defendant's request for a downward departure from the applicable sentencing range is **GRANTED.**