# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 22, 2013   Decided April 4, 2014

No. 11-3072

UNITED STATES OF AMERICA,
APPELLEE

v.

REGINALD CLARK,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00110-1)

*Jessica L. Ellsworth*, appointed by the court, argued the cause for appellant. On the briefs were *Peter S. Spivack* and *Matthew J. Iaconetti*, appointed by the court.

*Katherine M. Kelly*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen*, *Jr.*, U.S. Attorney, and *Elizabeth Trosman*, Assistant U.S. Attorney.

Before: ROGERS and TATEL, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Concurring opinion filed by *Senior Circuit Judge* RANDOLPH.

TATEL, *Circuit Judge*: Challenging his conviction for bank and wire fraud, Appellant contends that the district court erroneously denied his *Batson* challenge and wrongly admitted certain evidence. Appellant also argues that the district court violated the Ex Post Facto Clause by calculating his sixty-three-month sentence on the basis of guidelines adopted subsequent to his crimes, applied an unwarranted aggravating role enhancement, and erred by basing his $200,000-plus restitution obligation in part on acquitted conduct. For the reasons set forth in this opinion, we reject Appellant's challenges to his conviction, his aggravating role enhancement, and his restitution obligation. But because the government concedes that the district court's retroactive application of the Sentencing Guidelines violated the Ex Post Facto Clause, we vacate Appellant's sentence and remand for resentencing.

## I.

From May 2001 through July 2003, Appellant Reginald Clark stole thousands of dollars from his employer, Hoya Federal Credit Union. Here's how he did it. While working as Hoya's accountant, Clark manipulated its accounting system so that the credit union funded Clark's withdrawals from his Hoya account. According to the indictment, Clark executed sixty-four such fraudulent transactions totaling approximately $119,280. Clark also arranged two unauthorized wire transfers from Hoya's account: one for $40,000 to an account Clark's cousin and the cousin's wife owned jointly; the other for $60,000 to Clark's own retirement account. The grand jury indicted Clark on four counts of bank fraud, 18 U.S.C. § 1344, two counts of false entry in federal credit institution records, *id*. § 1006, and two counts of wire fraud, *id*. § 1343.

For conspiring with his cousin and the cousin's wife to execute the $40,000 wire transfer, the grand jury indicted Clark on one count of conspiracy to commit bank fraud and wire fraud. *Id*. §§ 1349, 1344, 1343.

During jury selection, the government used five of its six allotted peremptory strikes on black jurors: a teacher, a condo manager, a software tester, a former employee of another credit union, and a man upset about the legal representation his cousin had received in an unrelated criminal case. Clark responded with a *Batson* challenge, claiming that the government unconstitutionally struck the black jurors on account of race. *See Batson v. Kentucky*, 476 U.S. 79 (1986). Seeking to determine whether the government allowed non-black jurors with similar characteristics to serve on the jury, the district court asked Clark's counsel whether he had prepared an analysis comparing the seated and struck jurors. Counsel explained that he had not, and although the court granted his request for "a moment" to do so, he never followed through. Largely due to the absence of this comparative analysis, the district court rejected Clark's *Batson* challenge, finding that he failed to produce sufficient evidence to demonstrate that the government engaged in purposeful discrimination.

At trial, the government presented testimony and documentary evidence showing that Clark manipulated Hoya's check payment system, that he made two unauthorized wire transfers, and that he used the stolen funds to pay for personal expenses. In addition to this direct evidence of guilt, the government elicited testimony from Hazel Logan, Clark's supervisor and Hoya's CEO, explaining how she discovered the scheme. Over Clark's objection, Logan testified that while conducting a routine review of Clark's bank account, she noticed that the account reflected a

$5,500 deposit made at a Hoya ATM and that Clark had failed to put any money into the ATM to cover the deposit. Logan then initiated the audit that unearthed the scheme to defraud Hoya.

The jury convicted Clark on all but two counts: the conspiracy count, which the government never presented to the jury and was later dismissed; and the bank fraud count that alleged a single fraudulent automated bill payment. The district court sentenced Clark to sixty-three months' imprisonment. In so doing, the court calculated Clark's sentence based on the 2010 Sentencing Guidelines instead of the Guidelines in effect at the time of the offense and then applied a two-level aggravating role enhancement. *See* U.S.S.G. § 3B1.1(c). Invoking the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A, the court also ordered Clark to pay over $219,000 in restitution—the entire loss alleged in the indictment, including losses attributable to the bank fraud count on which Clark was acquitted.

On appeal and with appointed counsel's able assistance, Clark now challenges his conviction on the grounds that the district court erroneously rejected his *Batson* challenge and admitted the ATM evidence, his sentence on the grounds that the court violated the Ex Post Facto Clause by using the 2010 Sentencing Guidelines and erred by applying an aggravating role enhancement, and his restitution obligation on the ground that it included acquitted conduct. We consider each set of issues in turn.

## II.

The Constitution bars the government from using peremptory challenges to exclude prospective jurors on the basis of race. *See Batson*, 476 U.S. at 89; *United States v.*

*Moore*, 651 F.3d 30, 40 (D.C. Cir. 2011). *Batson* challenges proceed in three steps. First, the defendant must establish a prima facie case of discrimination. Next, the government must offer a race-neutral justification for each challenged strike. Finally, the court must consider "all of the circumstances that bear upon the issue of racial animosity" to determine whether the government engaged in purposeful discrimination. *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008). In this case, the district court was quite skeptical about several of the government's strikes. But observing that Clark failed to present an analysis comparing the struck jurors with the seated jurors, the court concluded at *Batson*'s final step that Clark had offered insufficient evidence to find "that the government's . . . strikes were exercised for racial reasons." Trial Tr. 10 (Jan. 18, 2011). We review for clear error. *United States v. Gooch*, 665 F.3d 1318, 1324 (D.C. Cir. 2012).

Clark first argues that the district court clearly erred by relying on its own concern about one of the struck jurors—the teacher—rather than limiting its analysis to the government's stated rationale, that it feared teachers would be too inclined to give defendants second chances. Clark is correct that a district court may not substitute its own reasons for those given by the government, *see Miller-El v. Dretke*, 545 U.S. 231, 251–52 (2005), but he is wrong that the court did so in this case. Although the district court had its own doubts about the teacher's fitness for jury service and was quite skeptical of the government's claim that teachers favor defendants, the court made clear that it based its decision on the government's proffered justifications. "I don't think there is enough here," the court explained, "to conclude that the *government's* representations about why the strikes were exercised are not a genuine representation of the government's thinking." Trial Tr. 10 (Jan. 18, 2011) (emphasis added).

As to the other jurors, Clark contends that the district court overlooked clear evidence that the government's justifications were pretextual. He maintains that the government's reason for striking the condo manager (she knew too little about issues relevant to the case) and its reason for striking the software tester (he knew too much) are necessarily inconsistent and therefore pretextual. Yet as the government points out, the justifications are in fact consistent. The government—reasonably in our view—may have wanted jurors able to follow the case while at the same time fearing jurors who might bring unwanted expertise into their deliberations. Likewise, the government worried—again reasonably—that the former credit union employee would bring her personal knowledge about credit union operations into the case and that the juror whose cousin had a bad defense lawyer could be overly sympathetic to defendants. Far from committing clear error, the district court took Clark's *Batson* challenge seriously and made a reasonable decision based on the arguments and facts presented.

For the first time on appeal, Clark now offers the comparative analysis of struck and seated jurors that the district court had inquired about, arguing that this analysis provides powerful evidence of the government's discriminatory intent. As Clark concedes, we review this unpreserved argument for plain error. *Gooch*, 665 F.3d at 1331–32. *But cf. Miller-El*, 545 U.S. at 241 & n.2 (reasoning that comparative-analysis-based arguments are theories about record evidence rather than new evidence). In the *Batson* context, an error is plain if the government's discriminatory intent is "manifest, patent, or unmistakable." *Gooch*, 665 F.3d at 1332 (internal quotation marks omitted).

According to Clark, comparisons of the condo manager (whom the government justified striking based on its concern

that she lacked sufficient knowledge to follow the accounting issues in the case) and the software tester (whom the government justified striking based on its concern that he might use his expertise to second-guess Hoya's accounting software) with several seated non-black jurors sharing these characteristics reveal incontrovertible evidence of the government's discriminatory intent. But as the government points out, the struck and seated jurors differ in meaningful ways. With respect to the condo manager, the government had a nondiscriminatory basis for believing that each of the seated jurors could better follow the complex accounting issues: Juror 1282 "handle[d] some financial[s] at work" and had previously served on a jury, Trial Tr. 39 (Jan. 13, 2011); Juror 1395 was familiar with accounting principles from his work as an accounting firm lobbyist, *see id.* at 51–53; and Juror 0488 had a Ph.D. in physics, *see id.* at 48–49. Likewise, with respect to the software tester, none of the comparators revealed similar levels of advanced software expertise: Juror 1124 worked on computer hardware, not software, *see* Trial Tr. 87 (Jan. 13, 2011, P.M. Session); Juror 0488 was an astronomer, not a software specialist, *see* Trial Tr. 49 (Jan. 13, 2011); and Juror 1210, a prosecutor in the Justice Department's intellectual property and computer crimes section, worked on intellectual property cases, not computer crimes, *see id.* at 70. Given these differences between struck and seated jurors, Clark's comparative analysis provides no "unmistakable" evidence of the government's discriminatory intent. *Gooch*, 665 F.3d at 1332 (internal quotation marks omitted); *see also Snyder*, 552 U.S. at 483 (cautioning that "when alleged similarities were not raised at trial . . . an appellate court must be mindful that an exploration of the alleged similarities at the time of trial might have shown that the jurors in question were not really comparable"). Clark has thus failed to demonstrate that the district court committed clear or plain error in denying his *Batson* challenge.

Clark's remaining challenge to his conviction fares no better. He argues that the district court erred by failing to exclude evidence about the $5,500 ATM transaction as inadmissible propensity evidence. *See* Fed. R. Evid. 404(b). Overruling Clark's objection, the district court concluded that the evidence fell outside Rule 404(b) because it was intrinsic to the charged offenses and relevant to "tell the entire story of what took place and how this whole thing was uncovered." Trial Tr. 232 (Jan. 19, 2011). It is true, as Clark argues, that we have rejected a "complete the story" exception to Rule 404(b) and held that the "inextricably intertwined" exception is narrow. *United States v. Bowie*, 232 F.3d 923, 928–29 (D.C. Cir. 2000). But in this case, we have no need to determine whether the district court erred because any error, even if one occurred, was harmless. *See Kotteakos v. United States*, 328 U.S. 750, 776 (1946) (holding that nonconstitutional errors that have no "substantial and injurious effect . . . [on] the jury's verdict" must be disregarded). The government presented overwhelming evidence of Clark's guilt—most notably, documents showing his use of the fraudulently obtained funds to pay for his own expenses—and the ATM evidence added little to its case.

## III.

Clark argues that the district court erred by applying a two-level enhancement for his aggravating role as "an organizer, leader, manager, or supervisor of criminal activity involving fewer than five participants." U.S.S.G. § 3B1.1(c). In the district court, Clark objected to the enhancement on the ground that it rested on the dismissed conspiracy charge. Here he offers a different argument: that the district court failed to make the necessary finding that Clark exercised control over another criminal participant. *See United States v. Smith*, 374 F.3d 1240, 1250 (D.C. Cir. 2004) ("All persons receiving an

enhancement [under Section 3B1.1] must exercise some control over others . . . ." (internal quotation marks omitted) (alteration in original)). Because Clark's objection failed to put the district court and the government on notice that he disputed the issue of control, Clark has forfeited any challenge to the sufficiency of the district court's finding on this question. *See Adams v. Rice*, 531 F.3d 936, 945 (D.C. Cir. 2008) (holding that a party forfeits for appeal arguments not raised before the district court). Our review is thus for plain error. *See United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010).

To justify the enhancement, the district court relied on the presentence report's unchallenged finding that Clark "was the mastermind of his offense," as well as its own finding that Clark's cousin, who siphoned nearly $30,000 from the $40,000 Clark unlawfully wired to the cousin's account, was "involved in th[e] whole event." Trial Tr. 7 (Aug. 4, 2011); s*ee* Fed. R. Crim. P. 32(i)(3)(A) (providing district court "may accept any undisputed portion of the presentence report as a finding of fact"). As Clark emphasizes, we have previously found "conclusory labels . . . inadequate" justifications for sentencing enhancements. *United States v. Graham*, 162 F.3d 1180, 1183 (D.C. Cir. 1998). But the word "mastermind" has real meaning: masterminds direct and control others. *See* Webster's Third New International Dictionary 1390 (1993) ("2: a person who supplies the directing or creative intelligence for a project or for a group of persons undertaking a project"). To be sure, the "others" might be innocent and unwitting participants. Here, however, we are convinced by the district court's discussion of Clark's cousin's criminal involvement that the court found that Clark controlled at least one criminal participant. Because this justification for the aggravating role enhancement hardly

"exceeds the limits of our deference," we see no error, much less plain error. *Smith*, 374 F.3d at 1250.

Clark's Ex Post Facto Clause challenge requires a different result. The Ex Post Facto Clause prohibits the courts from applying the Sentencing Guidelines retroactively. *See Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013). The district court sentenced Clark under the 2010 Guidelines for crimes he committed years earlier. Although Clark failed to object at sentencing, the government concedes, as it must, that this amounted to plain error. We shall therefore vacate Clark's sentence and remand for resentencing under the proper Guidelines.

## IV.

The Mandatory Victims Restitution Act directs sentencing courts to order individuals convicted of bank fraud to "make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). Finding the approximately $219,000 loss alleged in the indictment—including the losses from the bank fraud count on which Clark was acquitted—attributable to Clark's scheme, the district court ordered him to make restitution for the entire amount. Clark argues that the court's inclusion of losses flowing from the acquitted count violated Supreme Court and D.C. Circuit decisions that limit restitution orders to "*the offense of conviction*." *See Hughey v. United States*, 495 U.S. 411, 413 (1990) (emphasis added); *United States v. Dorcely*, 454 F.3d 366, 377 (D.C. Cir. 2006). In the district court, however, Clark made a very different argument—that the restitution order lacked sufficient evidentiary support. To be sure, Clark did refer to his acquittal, but he never advanced the position he urges here—that nothing in the MVRA authorizes restitution for acquitted conduct. Our review is thus again for plain error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009).

Contrary to Clark's contention, neither of the decisions he cites clearly forecloses including acquitted conduct in restitution orders. Although the two decisions do limit restitution to the "offense of conviction," neither resolves the question we face here: whether restitution is appropriate for acquitted conduct that falls within the scope of other scheme-based offenses of conviction—here, the other three bank fraud counts. The district court thus committed no plain error. *See United States v. Laureys*, 653 F.3d 27, 32–33 (D.C. Cir. 2011) ("Rarely do we find an error to be plain where this court has not ruled on the question." (internal quotation marks omitted)).

## V.

For the foregoing reasons, we affirm Clark's conviction and restitution obligation, vacate his sentence, and remand for resentencing.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*, concurring: I join the opinion of the court but write separately to say a few words about § 3B1.1(c) of the U.S. Sentencing Guidelines. It seems to me to be a mistake to say that the § 3B1.1(c) enhancement applies if, and only if, the defendant has exercised "control" over one or more of the participants in the crime.

Section 3B1.1(c) states: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase [the offense level] by **2** levels."[1] In my view one can be a "leader" or "organizer" within the meaning of that provision without controlling other persons. The President of the United States, for instance, is sometimes called the leader of the Free World, but no one thinks this means he controls other countries. The commentary accompanying § 3B1.1 makes clear that control is just one of the many factors to be considered in determining whether the defendant was a leader or organizer. *See* U.S.S.G. § 3B1.1 application note 4.[2]

---

[1] Subsections (a) and (b) are as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.

[2] Application note 4 to § 3B1.1 instructs that, in determining whether a defendant is a leader or organizer,

[f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or

The court held in *United States v. Graham* that no one of those factors is "dispositive." 162 F.3d 1180, 1185 (D.C. Cir. 1998).

The confusion arises because *Graham*—a § 3B1.1(<u>b</u>) case, not, as here, a § 3B1.1(<u>c</u>) case—a few lines later said: "All persons receiving an enhancement must exercise some control over others." *Id.* Subsection (b) applies only to managers and supervisors; it does not apply to a defendant who was an organizer or leader. *See* U.S.S.G. § 3B1.1(b). Applying that statement to the entire Guideline, including subsection (c), would render lack of control dispositive for leaders and organizers. This would render *Graham* self-contradictory because control is just one of the factors to be considered.

I therefore would not treat this one sentence from *Graham*, which was dictum as applied to organizers and leaders, as settling the issue under § 3B1.1(c). Although the sentence has been sporadically repeated, *see, e.g.*, *United States v. Smith*, 374 F.3d 1240, 1250 (D.C. Cir. 2004); *United States v. Quigley*, 373 F.3d 133, 139 (D.C. Cir. 2004), it has hardly become our consistent approach. *Cf.* Maj. Op. at 8. We have also repeated, since *Graham*, that "[w]hile plainly control is one factor in determining whether someone qualifies as an 'organizer or leader,' the Guidelines include several other factors." *United States v. Brodie*, 524 F.3d 259, 270 (D.C. Cir. 2008); *see also United States v. Wilson*, 240 F.3d 39, 122-23 (D.C. Cir. 2001).

A brief survey of the other circuits' treatment of § 3B1.1 indicates that "[m]ost courts require that . . . the defendant [] exercise some degree of control over others involved in the commission of the offense *or* [that he] have been responsible for

organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*organizing others for the purpose of carrying out the crime.*" DAVID DEBOLD, PRACTICE UNDER THE FEDERAL SENTENCING GUIDELINES § 3.04(A)(2)(c) (2013) (emphasis added); *see, e.g.*, *United States v. Wasz*, 450 F.3d 720, 730 (7th Cir. 2006); *United States v. Riley*, 335 F.3d 919, 929 (9th Cir. 2003); *United States v. Giraldo*, 111 F.3d 21, 24 (5th Cir. 1997). The circuits do vary somewhat in their approaches. *See* THOMAS W. HUTCHISON ET AL., FEDERAL SENTENCING LAW & PRACTICE 1195-97 (2013). But the approach Clark urges us to adopt would preclude applying the enhancement when "the defendant played a coordinating or organizing role," *United States v. Brown*, 315 F.3d 929, 932 (8th Cir. 2003) (internal quotation marks and citation omitted), or when, as here, it is the defendant's "expertise alone that made the operation possible," *United States v. Kelly*, 204 F.3d 652, 657-58 (6th Cir. 2000). I cannot reconcile such an approach with the Guideline.

The record supports the district court's finding that Clark was the "mastermind" of this offense, and I agree with the majority that "[m]asterminds direct and control others." Maj. Op. at 9. That is sufficient, though not in my view necessary, to affirm the two-level enhancement.